UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            CRIMINAL NO. 25-20566

v.                                   HON. JUDITH E. LEVY

JANINE RAYFORD,

        Defendant.

_____/

## Government's Sentencing Memorandum

When Covid-19 hit, Janine Rayford had been working as an analyst for the State of Michigan Unemployment Insurance Agency since late 2017. That job was the latest in a series of civil service positions Rayford held with the State of Michigan beginning in 2011. Government service made sense for Rayford, who had earned not just a Bachelor of Arts degree from the University of Michigan, but also a Master of Public Administration.

However, rather than put her impressive skills and knowledge to use in serving the public good during a crisis, Rayford decided to take advantage of the global pandemic to enrich herself. Rayford accepted bribes from multiple third parties—including other State of Michigan employees—to improperly release unemployment insurance claims for payment. In total, Rayford improperly accessed

1

and released approximately 150 claims for payment, some of which were entirely fraudulent.

As a result of Rayford's illicit conduct, more than $2.86 million in unauthorized unemployment insurance funding was issued to third-party claimants. Rayford has admitted to accepting more than $50,000 in bribes for her improper actions.

The PSR has calculated Rayford's guideline range to be 70-87 months' imprisonment for conspiring to commit federal program bribery. However, because the statutory maximum sentence for that offense is 60 months, Rayford's effective sentencing guideline is 60 months' imprisonment for that charge. Rayford faces an additional 24-month mandatory consecutive sentence for aggravated identity theft.

For the reasons discussed below, the government recommends a substantial term of imprisonment.

## I.    Facts and Procedural History

On July 28, 2025, Rayford was charged with one count of conspiring to commit federal program bribery, in violation of 18 U.S.C. § 371, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. On August 28, 2025, Rayford entered a guilty plea to those charges pursuant to a Rule 11 plea agreement. (ECF No. 11.)

## II.     Section 3553(a) Factors

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).

Thus, the starting point here is 60 months' imprisonment, followed by a mandatory 24-month sentence. (PSR ¶¶ 55-57.)

3

### a.  The Nature and Circumstances of the Offense

Janine Rayford put government services up for sale. And as a seasoned civil servant, that violation was particularly egregious. Rayford's discussions with co-defendant Jennae Reed show her actively soliciting potential bribes, asking Reed to tell her "if you have anyone else" and stating "[w]e need some extra cash":

| Phone | | | | Timestamp: 6/30/2021 9:32:20 PM(UTC+0) | Direction: Outgoing Body: Yes!!! I will have somebody tomorrow |
|---|---|---|---|---|---|
| | | Janine * ██████ | | | **Participants:** |
| | | | | | Participant    Delivered    Read    Played |
| | | | | | ██████ Janine |
| | | | | | ██████ on: Advanced Logical Status: Sent Message Type: SMS Folder: Sent |
| Phone | ██████ Janine * ██████ | | | Timestamp: 6/30/2021 9:30:44 PM(UTC+0) | Direction: Incoming Body: We need some extra cash |
| | | | | | Source Extraction: Advanced Logical Status: Read Message Type: SMS Folder: Inbox |
| Phone | ██████ Janine * ██████ | | | Timestamp: 6/30/2021 9:11:10 PM(UTC+0) | Direction: Incoming Body: Ok let me know if you have anyone else |
| | | | | | Source Extraction: Advanced Logical Status: Read Message Type: SMS Folder: Inbox |
| Phone | | Janine * ██████ | | Timestamp: 6/30/2021 9:01:23 PM(UTC+0) | Direction: Outgoing Body: Ok thanks!! Trying to get us some holiday$$ |
| | | | | | **Participants:** |
| | | | | | Participant    Delivered    Read    Played |
| | | | | | ██████ Janine |
| | | | | | ██████ on: Advanced Logical Status: Sent Message Type: SMS Folder: Sent |

4

In other exchanges, Rayford and Reed try to price government service like it was a market commodity, debating whether they should charge "$250 a piece" or "$500 a piece"



Rayford admitted that she ultimately got the "extra cash" she was seeking in the form of tens of thousands of dollars of illicit payoffs. (ECF No. 11, PageID.30.)

As noted above, some of the claims Rayford improperly pushed through were entirely fraudulent. And Rayford has admitted to knowing that she was pushing through an entirely fraudulent claim on at least one occasion. (*Id*. at PageID.31.) That claim involved a real individual, L.H., whose identity appears to have been stolen. To release payment on the claim in L.H.'s name, Rayford improperly dismissed a fraud prevention trigger despite knowing that L.H.'s claim was supported by a fraudulent passport. (PSR ¶ 9.)

Notably, this was not a one-time lapse in judgment by Rayford. She repeatedly made the decision to accept bribes and improperly push through a staggering amount of unemployment claims.

### b.  History and Characteristics of the Defendant

Unfortunately, engaging in a massive bribery scheme was not Rayford's only pandemic-era criminal activity. As she has admitted, she also obtained more than $20,000 from a fraudulent PPP application she caused to be submitted. (ECF No. 11, PageID.33.)

Rayford is a well-educated professional who has held several civil positions since 2011. (PSR ¶¶ 50-53.) And unlike so many, Rayford kept her employment during the Covid pandemic. But these advantages did not stop her from committing

her fraud—and that reflects a heightened level of fault. *See, e.g.*, *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) ("Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.").

And although Rayford is technically a "first-time criminal" because she has no prior convictions, she has admitted to engaging in criminal activity on countless occasions. This differentiates Rayford from first-time offenders whose conduct was actually a "one-time thing." *See United States v. Folliet*, 574 F. App'x 651, 658 (6th Cir. 2014) ("Though Defendant might have been a 'first time criminal' in the sense that she had no prior convictions, the district court mentioned several times that 'this was not a one-time thing'—Defendant stole countless times from the victim and various charities over the course of seven years.").

### c. Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense

This is a serious offense. Crimes like Rayford's are an attack on honest government. These schemes also make it more difficult for deserving claimants to receive needed government assistance.

Notably, the Sixth Circuit has specifically highlighted the need for courts to impose sufficient sentences on white-collar defendants that reflect the seriousness of the offense, promote respect for the law, and provide just punishment without

relying on impermissible considerations of collateral consequences that such defendants might be more likely to experience. *See United States v. Musgrave*, 761 F.3d 602, 608 (6th Cir. 2014) ("[W]hen a district court varies downward on the basis of the collateral consequences of the defendant's prosecution and conviction, the defendant's sentence will not reflect the seriousness of the offense, nor will it provide just punishment.").

Rayford has already received a significant break in this case by virtue of the government's agreement to charge her under a conspiracy statute carrying a five-year statutory maximum sentence. Had the government pursued a substantive bribery charge under 18 U.S.C. § 666, Rayford would be exposed to her full guideline range of 70-87 months' imprisonment.

A substantial custodial sentence is needed to reflect the seriousness of the offense, promote respect for the law, and ensure just punishment.

### d. Adequate Deterrence and Protection of the Public

As the Sixth Circuit has recognized, "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (citations omitted).

An unambiguous message of deterrence should be sent to others who might be tempted to sell government services: a substantial prison sentence awaits you.

**e. Providing Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner; Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities**

Consideration of stiffer white-collar penalties applies particularly to public corruption cases. In November 2004, the Sentencing Commission amended the guidelines to increase the punishment for corrupt public officials. The Commission explained that "public corruption offenses previously did not receive punishment commensurate with the gravity of such offenses," especially when compared with other white-collar crimes. USSG, App'x C, Vol. III, at 82 (Amendment 666). The Commission thus increased the base offense level for public officials, like Rayford, because "offenders who abuse their positions of public trust are inherently more culpable than those who seek to corrupt them, and their offenses present a somewhat greater threat to the integrity of governmental process." *Id*.

## III.   Conclusion

For the reasons discussed above, the Court should impose a substantial term of imprisonment.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

s/Andrew J. Yahkind
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: (313) 226-9565
E-Mail: andrew.yahkind@usdoj.gov

Dated: February 3, 2026

**Certificate of Service**

I certify that on February 3, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Sanford Schulman
Attorney for Janine Rayford

I also certify that I will, on today's date, email a copy of the foregoing document to Kody Belamy, the assigned probation officer in this matter.

s/Andrew J. Yahkind
Andrew J. Yahkind
Assistant U.S. Attorney
United States Attorney's Office
